IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Criminal No. 20-40 Erie |
| TYVARH NICHOLSON | |

## Sentencing Memorandum of the United States

During the May 30, 2020 riot in downtown Erie, Tyvarh Nicholson threw Molotov cocktails in the direction of the police who were attempting to quell the riot. Nicholson has a lengthy criminal record that includes violent behavior, drug dealing and illegal firearm possession. He deserves a guideline sentence.

## Factual Background

Tyvarh Nicholson's involvement in the downtown Erie riot on May 30, 2020 was captured on several different security videos. A series of videos from surveillance cameras at a downtown gas station show Nicholson emptying plastic water bottles and filling them from gas pumps. He can also be observed on the videos pouring water from a plastic bottle on to his hands in an effort to wash his hands.

In other downtown security videos, Nicholson can be seen carrying water bottles which appear to have a substance in them other than water. He is also captured on video throwing several of these water bottles in the direction of the police after lighting the top of the bottle, which contained a wick. ATF analysis of the water bottles indicated that the plastic bottles which Nicholson threw, which

were recovered, contained gasoline.  ATF has provided their expert opinion that the bottles thrown by Nicholson were destructive devices under federal law.

On August 26, 2020, the FBI interviewed Nicholson after he waived *Miranda*.  He provided a complete confession and initialed images of himself from the incriminating videos.  He also admitted to breaking into a bar in the area of the riot, with other rioters, and stealing various bottles of liquor, one of which he was photographed carrying during the riot.

## Argument

**A. Sentencing Protocol**

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008).  First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).  Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237).  Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose." *Wise*, 515 F.3d at

216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

## B. Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Nicholson is 70 to 87 months.

## C. Departures

The United States is not seeking a departure. A sentence within the guideline range is appropriate. Nicholson is likely seeking a downward departure based on the claim that his criminal history score overstates the significance of his prior criminal activity.

His argument is misplaced for several reasons. First, the language of U.S.S.G. § 4A1.3(b) which addresses criminal history downward departures states:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

This language sets a high bar for qualification for a downward departure that Nicholson cannot meet. Second, Nicholson has a juvenile adjudication and six prior adult convictions indicating a recurring inability and refusal to abide by the law. Third, Nicholson did not receive any criminal history points for his retail theft conviction in September 2013 even though he does not dispute the conviction. Fourth, Nicholson was on court supervision at the time he committed the instant federal offense which should greatly trouble the Court. Nicholson disregarded his

3

supervision rules and requirements and took the drastic step of willingly and gleefully rioting on May 30, 2020. That is not conduct that indicates his criminal history is overstated. Rather, it confirms what Nicholson's lengthy criminal record clearly indicates – he has a big problem consistently controlling his impulsive criminal behavior.

### E. Section 3553 Factors

When sentencing a defendant, the Court's reasoning must be guided by all the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background. *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). In pertinent part, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate way to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a guideline range sentence for Nicholson.

1. **Nature and Circumstances of the Offense**

Nicholson threw Molotov cocktails, which the ATF has identified as destructive devices, in the direction of the police who were attempting to subdue the downtown Erie riot on May 30, 2020. Nicholson may claim that he was not throwing his destructive devices toward the police. Even if that is credible, which it is not, he was plainly hurling bottles full of gasoline containing a lit wick toward others because the streets were full of people. He did not throw these Molotov cocktails in a corn field. Rather, he was in the midst of a riot crowded with people including fellow rioters, police, and other bystanders such as media personnel. Whatever direction he threw these bombs was toward people.

Nicholson was not there to peacefully protest. Rather, he was there for the sole purpose of wreaking havoc. He also illegally entered a downtown restaurant for the sole purpose of stealing alcohol. Nicholson did all this while on probation. There is nothing mitigating about his willful conduct on May 30, 2020.

**2. History and Characteristics of the Defendant**

Nicholson reported no instances of abuse or neglect during his upbringing. (PSIR ¶ 43). He reported having good relationships with his parents, a fact confirmed by the support his father expressed for him during testimony at an earlier hearing. (PSIR ¶ 43). Nicholson has no history of health problems ((PSIR ¶ 48).

He reported a history of mental illness (PSIR ¶ 49). While undersigned counsel is certainly not suggesting that Nicholson's sentence be increased because of his mental health issues, neither are they a reason to reduce his sentence. The unfortunate fact is that Nicholson's mental illness makes him less reliably law abiding upon release from jail. This case is a stark example. If Nicholson does not follow his mental health regimen, negative outcomes for him and society are sure to follow. Unfortunately, Nicholson has run out of second chances. He can no longer be given the benefit of the doubt given his history of erratic and dangerous behavior.

Nicholson also claims to have been using cocaine on the day of the riot. His drug use is certainly not mitigating. Combined with his mental illness it makes him highly unpredictable and reduces confidence in his future ability to avoid criminal activity.

### 3. The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime, and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

Nicholson did not have to participate in the May 30th riot. He could have stopped at any point prior to hurling destructive devices at the police. Instead, he methodically brought himself to that point increasing the danger at each step. Nicholson left his residence bent on causing mayhem. He then traveled to a gas station and filled up bottles with gasoline. He carried those highly flammable and explosive bottles with him into a chaotic scene until he finally lit the fuse and threw them. At any point after gas began flowing into those bottles numerous people could have been hurt.

Nicholson disregarded risks and dangers that were obvious.  He ignored the hazard to everyone around him as he carried his Molotov cocktails into a trouble zone.  He had no hesitation as he lit the fuse.  Surely a significant sentence must be imposed here to promote respect for the law and reflect Nicholson's serious, methodical conduct.

### 4. Deterrence

Deterrence is a significant consideration here.  The Court must not only deter Nicholson from future criminal conduct, especially considering his lengthy criminal history, but must also send a loud and clear message to the community that rioting and extreme behavior with destructive devices will not be tolerated.

By imposing a significant sentence here, the Court can leave no doubt as to what awaits future rioters.  Preventing a future tragedy must be paramount in the Court's consideration of the sentencing factors here.

Wherefore, for the foregoing reasons, Nicholson should receive a guideline sentence.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney


*s/Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013